# Case No. 17-70826

## *IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT*

---

**ROBERT TALBOT**,

Appellant,

v.

**COMMISSIONER OF INTERNAL REVENUE,**

Appellee.

---

ON APPEAL FROM THE DECISION OF
THE UNITED STATES TAX COURT
HON. KATHLEEN KERRIGAN, JUDGE
(Tax Court Case No. 26598-14L)

---

BRIEF OF APPELLANT TALBOT
ORAL ARGUMENT NOT REQUESTED

---

Peter Gibbons
Attorney for Appellant
1805 North Carson Street, St. E
Carson City, NV 89701-1216
775-546-1450
LawDr1@npn.net

# TABLE OF CONTENTS

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Cases, Statutes and Other Authorities. . . . . . . . . . . . . . . . . . . . . . . . . ii

Jurisdictional Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Issue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A. Factual Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B. Proceedings in the Tax Court.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Issue: The Tax Court erred in its memorandum decision and final order. . . . . . . . 9

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Statement of Related Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

TABLE OF CASES, STATUTES AND OTHER AUTHORITIES

Cases:                                                                                          Page:

*Barnes v. CIR*, T.C. Memo. 2010-30.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Calderone v. CIR*, T.C. Memo. 2004-240. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Coleman v. CIR*, 94 T.C. 82 (1990).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 29

*Conn v. CIR*, T.C. Memo. 2008-186. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Crum v. CIR*, 635 F.2d 895 (D.C. Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Custer v. Murphy Oil USA Inc.*, 503 F.3d 415 (5th Cir. 2007).. . . . . . . . . . . . . . 23

*Cyclone Drilling, Inc. v. Kelley*, 769 F.2d 662 (10th Cir. 1985). . . . . . . . . . . . . 11

*Holof v. CIR*, 872 F.2d 50 (3rd Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hoyle v. CIR*, 131 T.C. No. 13 (2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Jones v. CIR*, 338 F.3d 463 (5th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Keado v. United States*, 853 F.2d 1209 (5th Cir. 1988). . . . . . . . . . . . . . . . . . . . 26

*Keller v. Commissioner*, 568 F.3d 710 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . 22

*Kindred v. CIR*, 454 F.3d 688 (7th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Knudsen v. CIR*, T.C. Memo. 2015-69. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Kuykendall v. CIR*, 129 T.C. 77 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Kyhn v. Shinseki,* 716 F.3d 572 (Fed Cir. 2013).. . . . . . . . . . . . . . . . . . . . . . . . . 23

*Leason v. Rosart*, 811 F.2d 1322 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . 23, 24

*Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314 (3d Cir. 2014).. . . . . . . . . . . 23

*Magazine v. Commissioner*, 89 T.C. 321 (1987). . . . . . . . . . . . . . . . . . . . . . . . . 27

*McGowan v. Deere & Co.*, 581 F.3d 575 (7th Cir. 2009).. . . . . . . . . . . . . . . . . . 25

*McPartlin v. CIR*, 653 F.2d 1185 (7th Cir. 1981). . . . . . . . . . . . . . . . . . . . . 12, 13

*Meyer v. CIR*, T.C. Memo. 2013-268. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Mulder v. CIR*, 855 F.2d 208 (5th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Mulvania v. CIR*, 769 F.2d 1376 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . 11

*Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495 (9th Cir. 2015).. . . . . . . . . . . . . . 25

*Nunley v. City of Los Angeles*, 52 F.3d 792 (9th Cir.1995). . . . . . . . . . . . . . . . . 24

*O'Rourke v. United States*, 587 F.3d 537 (2d Cir. 2009). . . . . . . . . . . . . . . . . . . 29

*Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003).. . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Pietanza v. CIR*, 92 T.C. 729, 741 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Powell v. CIR*, 958 F.2d 53 (4th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Robinson v. United States*, 920 F.2d 1157 (3rd Cir. 1990).. . . . . . . . . . . . . . . . . 14

*Roszkos v. CIR*, 850 F.2d 514 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sacks v. CIR*, 82 F.3d 918 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Salta v. INS*, 314 F.3d 1076 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Santana Gonzalez v. Att'y Gen.*, 506 F.3d 274 (3d Cir. 2007). . . . . . . . . . . . . . . 23

*S.E.C. v. Phan*, 500 F.3d 895 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Sicker v. CIR*, 815 F.2d 1400 (11th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . 13, 14

*Tatum v. CIR*, T.C. Memo. 2003-115. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Terrell v. CIR*, 625 F.3d 254 (5th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Ahrens*, 530 F.2d 781 (8th Cir. 1976). . . . . . . . . . . . . . . . . . . 29

*United States v. Bucur*, 194 F.2d 297 (7th Cir. 1952). . . . . . . . . . . . . . . . . . . 24

*United States v. Dellinger*, 472 F.2d 340 (7th Cir. 1972). . . . . . . . . . . . . . . . . 25

*United States v. Hannigan*, 27 F.3d 890 (3d Cir. 1994). . . . . . . . . . . . . . . . . . 23

*United States v. Matot*, 146 F.2d 197 (2d Cir. 1944). . . . . . . . . . . . . . . . . . . . . 24

*United States v. Wright*, 658 F. Supp. 1 (D. Alaska 1986). . . . . . . . . . . . . . . . . 27

*United States v. Zolla*, 724 F.2d 808 (9th Cir. 1984). . . . . . . . . . . . . . . . . . . . . 26

*Wallin v. CIR*, 744 F.2d 674 (9th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Welch v. United States*, 678 F.3d 1371 (Fed. Cir. 2012). . . . . . . . . . . . . . . . . . 26

*Westpac Pacific Food v. CIR*, 451 F.3d 970 (9th Cir. 2006). . . . . . . . . . . . . . . . 9

Statutes, Regulations and Rules:

26 U.S.C. § 6020. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

26 U.S.C. § 6212. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 10, 11, 14

26 U.S.C. § 6213. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 18

26 U.S.C. § 6320. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

26 U.S.C. § 6330. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 8, 9, 14, 15, 16, 20

26 U.S.C. § 7502. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

26 U.S.C. § 7482. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

26 C.F.R. § 301.6330-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

39 C.F.R. § 111.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Rule 91, Tax Court Rules of Practice and Procedure. . . . . . . . . . . . . . . . . . . . . . . 7

Rule 122, Tax Court Rules of Practice and Procedure. . . . . . . . . . . . . . . . . . . . . . 7

Rule 190, Tax Court Rules of Practice and Procedure. . . . . . . . . . . . . . . . . . . . . . 1

# JURISDICTIONAL STATEMENT

After pursuing certain matters administratively with the Internal Revenue Service, Appellant Robert Talbot ("Talbot") filed a petition with the U.S. Tax Court on April 7, 2014, and the Tax Court had jurisdiction of that matter pursuant to 26 U.S.C. §§ 6320(c) and 6330(d)(1). Talbot's petition is deemed timely filed pursuant to § 6330(d)(1).

The Tax Court entered a decision regarding this case on December 14, 2016, and Talbot's notice of appeal was filed on March 17, 2017. This notice was timely as Talbot mailed such to the Tax Court by certified mail on March 10, 2017. See 26 U.S.C. § 7502, and Rule 190(a), Tax Court Rules of Practice and Procedure.

This appeal arises from a decision of the United States Tax Court. The order which is the basis for this appeal is a final order and it disposed of all claims of the parties. This Court has appellate jurisdiction under 26 U.S.C. § 7482 (a)(1).

## STATEMENT OF THE ISSUE

**ISSUE: The Tax Court erred in its memorandum decision and final order.**

## STATEMENT OF THE CASE

### A. Factual Background.

The Internal Revenue Service ("IRS") contends that on or about January 12, 2009, notices of deficiencies as mandated via 26 U.S.C. § 6212 were sent to Talbot

1

by certified mail regarding taxes owed for calendar years 2003, 2004, and 2005.[1] Doc. 42,[2] Stipulated Exs. 16-J, 17-J, 18-J.  It is alleged that these notices were prepared by an IRS office in Ogden, Utah, and that on this same date, these notices were delivered to the U.S. Postal Service by some IRS employee, and such is evidenced by a "substitute" USPS Form 3877. Doc. 42, Stipulated Ex. 19-J.

Later, an IRS office in Denver, Colorado, allegedly prepared a notice of deficiencies for tax years 1999, 2000, and 2001, and it is contended that an IRS employee carried that notice to the U.S. Postal Service in Denver for sending to Talbot by certified mail on November 6, 2009. Doc. 42, Stipulated Exs. 15-J and 35-J.

On June 25, 2012, an IRS office in Anchorage, Alaska, mailed to Talbot a notice of levy informing him that it intended to collect the taxes assessed against him for the years 2003, 2004 and 2005.  That same notice informed Talbot of his statutory

---

[1] The notices of deficiencies for 2003, 2004 and 2005 all have the "signature" of an IRS employee named Henry Slaughter, and that signature appears the same on each notice, likely generated by an auto-pen. These notices are dated January 12, 2009. But there is a problem recently discovered and not raised in the Tax Court. It appears that Mr. Slaughter was born on July 7, 1933, and died on February 15, 2011 at 77 years of age. His funeral services were conducted by Lindquist Mortuaries and Cemeteries in Utah, and that company posted the following on its website regarding his funeral: "Bill and Shirley were married June 14, 1954, in the Salt Lake LDS Temple. He took his bride back to Bakersfield to continue working for the railroad. Three years later, they returned to Utah to begin his career with the Internal Revenue Service. He retired as a Database Administrator in 1988 after 31 years of service."

[2] The designation in this brief, "Doc.", refers to a particular pleading filed in the Tax Court as shown by the docket sheet and its docket number.

right to an administrative review known as a Collection Due Process Hearing conducted by an IRS Settlement Officer if Talbot sought such within 30 days. Doc. 42, Stipulated Ex. 1-J.

On July 11, 2012, the same IRS office in Anchorage, Alaska, mailed to Talbot a notice of levy informing him that it intended to collect the taxes assessed against him for the year 2001. That same notice informed Talbot of his statutory right for an administrative review known as a Collection Due Process Hearing conducted by an IRS Appeals Officer if Talbot sought such within 30 days. Doc. 42, Stipulated Ex. 2-J.

On July 25, 2012, and again on August 9, 2012, Talbot notified the IRS office in Anchorage that he was seeking a Collection Due Process Hearing. Doc. 42, Stipulated Ex. 7-J. In that notice, Talbot informed the IRS that he sought the following remedies:

> I am requesting for a Face-to-Face Collection Due Process Hearing in an Appeals office closest to my place of residence, which I will be audio recording. There are a few issues I wish to address, which are, but not limited to the following:
> Verify whether or not the IRS followed all proper procedure as required by law.
> l don't believe I am liable for the assess [sic] tax.
> I should NOT be held responsible for the penalties accrued.
> To challenge this "liability" seeing that I NEVER had a chance to challenge it before.

Doc. 42, Stipulated Ex. 7-J, page 5.

3

The IRS assigned to its Settlement Officer Valerie Weber, stationed in Sacramento, California, the duty to conduct Talbot's requested due process hearing regarding the taxes allegedly due for calendar years 2001, 2003, 2004 and 2005. When this administrative review was assigned to Weber, she commenced an effort to determine whether all legal and procedural requirements for assessing and collecting taxes had been followed by the IRS, as mandated by 26 U.S.C. §6330(c)(1). On September 7, 2012, she requested Certificates of Assessments and Payments regarding Talbot for these years. Doc. 42, Stipulated Ex. 29-J, page 1. On May 21, 2013, Weber wrote in her notes:

> E-mail to Tech services on CML[3] for 2001, 2002, 2003 and 2005. He could not find it on his system. Referred me to another tech. She was also unable to locate it w/o a specific date the ltr was sent. W/O estabs right now we are unable to do so.
> Only estab came back was 2003 and it states to contact the RCG corrdinator [sic]. Spent a good part of the morning trying to figure out just who to contact. Reached Harvey Spiegel 702-8686-5221.
> Rec'd e-mail to have me send info to him so he can find the SNOD's.
> Sent e-mail this after noon.

Doc. 42, Stipulated Ex. 29-J, page 3. Finally on November 7, 2013, Weber wrote in her notes that she obtained "[v]erification of SNOD for all there [sic] years 2003, 2004, 2005". Doc. 42, Stipulated Ex. 29-J, page 3.

---

[3] In IRS jargon, "CML" means "Certified Mailing Log," a reference to USPS Form 3877, discussed *infra*. The abbreviation "SNOD" is also IRS jargon that means "Statutory Notice of Deficiency".

4

On November 7, 2013, Weber mailed a letter to Talbot informing him that she would conduct a phone conference with him on December 4, 2013 to consider his issues. Doc. 42, Stipulated Ex. 9-J, page 3. That phone conference did not occur, and on December 9, 2013, Talbot wrote a letter to Weber asking for information regarding the due process hearing and stating:

> I did not receive any statutory notices of deficiency for the years at issue. I have NEVER had a previous opportunity to challenge the supposed tax liability.

Doc. 42, Stipulated Ex. 9-J, page 10.

On March 5, 2014, IRS employee Marlene Okajima sent a Notice of Determination to Talbot informing him that the IRS could proceed with its collection efforts because "[a]ll legal and procedural requirements were met", as mandated by 26 U.S.C. § 6330(c)(1). Addressing the issues raised by Talbot that he never received the statutory notices for these years, Okajima stated:

> Appeals has review [sic] the Certified mail listing to confirm the Statutory Notice of Deficiency (SNOD) was sent by certified mail to you for your 2003, 2004 and 2005 audit assessments. Appeals has obtained the IRC Section 6020(b) certification from the audit file for these periods. The certified mailing list (dated 1/12/2009) shows that for 2003, 2004 and 2005 tax periods the SNOD to 3592 E. Wanamingo Drive, Wasilla, AK 99654 under certified numbers #7178-2665-9395-4390-0550, 7178-2665-9395-4390-0567 and 7178-2665-9395-4390-0574 respectively.
>
> Your statutory notice of deficiency for your 2001 tax period was issued along with your 1999, 2000 tax years. Appeals has obtained the IRC Section 6020(b) certification signed on 10/22/20109 along with from 4549-A "Income Tax Discrepancy Adjustments". We obtained the notice copy which indicates the

5

notice was sent to 3592 East Wanamingo Drive, Wasilla, AK 99654. Appeals was not able to obtain the certified mailing list.

Doc. 42, Stipulated Ex. 23-J, page 6.

When a Collection Due Process procedure is finished, review may be obtained by filing a petition in the United States Tax Court. Talbot did so here.

### B. Proceedings in the Tax Court.

On April 7, 2014, Talbot filed a petition with the Tax Court seeking review of the conclusions reached by IRS Settlement Officer Weber after the above noted collection due process hearing (Doc. 1). This petition was finally amended on December 4, 2014 (Doc. 14), and Talbot generally alleged that during the Collection Due Process proceedings, Settlement Officer Weber had not verified compliance by the IRS with all legal requirements. The Respondent Commissioner filed his answer to Talbot's petition on January 20, 2015 (Doc. 17).

On April 16, 2015, the Commissioner filed a motion for summary judgment (Doc. 18), which was supported by a Declaration of Settlement Officer Valerie Weber (Doc. 19). On May 11, 2015, Talbot filed a response to that motion (Doc. 23), which asserted that he had never received any of the notices of deficiencies, and further arguing that Settlement Officer Weber had never confirmed that these notices had actually been prepared and mailed by certified mail to him at his last known address. The Commissioner's motion for summary judgment was denied on June 9, 2015

6

(Doc. 26).

On April 11, 2016, Talbot moved for summary judgment and supported the same with his declaration (Docs. 31, 32). The Commissioner opposed the same (Doc. 35), but this motion was denied by the Tax Court on May 9, 2016 (Doc. 36).

Trial of this case was set for June 14, 2016 in Anchorage. At that time, the parties entered into stipulations pursuant to Rules 91 and 122, Tax Court Rules of Practice and Procedure (Doc. 42), and submitted the case on that basis to the court. On October 17, 2016, Tax Court Judge Kathleen Kerrigan entered a memorandum opinion (Doc. 44) disposing of the case, and a final order was entered on December 14, 2016 (Doc. 45). Notice of appeal was timely filed on March 17, 2017 (Doc. 46), having been mailed by certified mail.

This appeal follows.

## SUMMARY OF ARGUMENT

Notices of deficiencies are extremely important tax documents because they are the method by which the IRS asserts that a taxpayer owes additional taxes. Mandated by 26 U.S.C. § 6212, they must be sent by certified or registered mail to the taxpayer's "last known address". At times, putative taxpayers do not receive these notices, and the IRS assesses the amounts claimed in the notices and starts administrative tax collection activities. For a party who did not receive a notice of deficiency and thus did not have any opportunity to contest the matter in Tax Court,

he can pay the tax claimed due and sue for a refund in the U.S. District Court. But if he cannot do that, he suffers various IRS collection activities.

In 1998, Congress enacted the Internal Revenue Service Restructuring and Reform Act of 1998, which added § 6330 to the 1986 Internal Revenue Code. This new section provides several "due process" safeguards for taxpayers facing IRS collection activities, and now taxpayers can seek hearings before IRS Appeals Office personnel and then petition the Tax Court if tax collection problems are not resolved. The specific problem arising from a failure to receive a notice of deficiency can be raised in these Collection Due Process hearings: "The appeals officer shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met," 26 U.S.C. § 6330(c)(1), and a putative taxpayer "may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person **did not receive any statutory notice of deficiency** for such tax liability or did not otherwise have an opportunity to dispute such tax liability," § 6330(c)(2)(B) [emphasis added].

Here, the IRS claimed to have mailed two separate notices of deficiencies to Talbot in 2009 for the tax years 2001, 2003, 2004 and 2005, and these notices asserted that he owed substantial sums as taxes. When Talbot failed to challenge these notices by means of proceedings in Tax Court, these sums were administratively assessed, and the IRS started collection efforts in June and July, 2012. This prompted

8

Talbot to pursue his statutory right authorized via 26 U.S.C. § 6330 to a Collection Due Process Hearing that ultimately resulted in litigation in the Tax Court.

Talbot argues in this appeal that there was no evidence submitted in either the IRS Appeals Office or before the Tax Court that these notices were actually mailed or received, and he offered evidence to Settlement Officer Weber that he never received these notices. Based on the clear evidence, Talbot was entitled to a factual determination to this effect. The IRS Appeals Office erred in this respect as did the Tax Court. This error consequently mandates that tax collection activities cease and the tax assessments claimed to be due for these years must be abated.

## ARGUMENT

**ISSUE: The Tax Court erred in its memorandum decision and final order.**

**I. Standard of review.**

This court reviews the Tax Court's legal conclusions *de novo*, and its factual findings for clear error. See *Westpac Pacific Food v. CIR*, 451 F.3d 970, 974 (9th Cir. 2006); and *Sacks v. CIR*, 82 F.3d 918, 920 (9th Cir. 1996). But in reference to cases of this nature, other courts have concluded that in a "'collection due process case in which the underlying tax liability is properly at issue, the Tax Court (and hence this Court) reviews the underlying liability *de novo* and reviews the other administrative determinations for an abuse of discretion.'" See *Kindred v. CIR*, 454 F.3d 688, 694 (7th Cir. 2006) (quoting *Jones v. CIR*, 338 F.3d 463, 466 (5th Cir. 2003).

## II. Record References.

All factual matters regarding this case were the subject of a stipulation by the parties and are found in the various exhibits attached thereto. See Doc. 42.

## III. Analysis.

### A. Collection Due Process Hearings.

When the IRS asserts that a taxpayer owes additional taxes for a particular year, it is required via 26 U.S.C. § 6212(b) to mail a document or letter named a notice of deficiency to the taxpayer's last known address:

> 26 U.S.C. § 6212. Notice of deficiency.
> (a) In general — If the Secretary determines that there is a deficiency in respect of any tax imposed by subtitles A or B or chapter 41, 42, 43, or 44 he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail. Such notice shall include a notice to the taxpayer of the taxpayer's right to contact a local office of the taxpayer advocate and the location and phone number of the appropriate office.
>
> (b) Address for notice of deficiency
> (1) Income and gift taxes and certain excise taxes — In the absence of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, notice of a deficiency in respect of a tax imposed by subtitle A, chapter 12, chapter 41, chapter 42, chapter 43, or chapter 44 if mailed to the taxpayer at his last known address, shall be sufficient for purposes of subtitle A, chapter 12, chapter 41, chapter 42, chapter 43, chapter 44, and this chapter even if such taxpayer is deceased, or is under a legal disability, or, in the case of a corporation, has terminated its existence.

Mailing a notice of deficiency permits the filing of a petition in Tax Court to contest the same. See 26 U.S.C. § 6213.

What constitutes the mailing of a notice of deficiency to a taxpayer's "last

known address" has been an issue frequently litigated, and a number of courts have concluded that certain of these notices were defective because they were not mailed to the taxpayer's "last known address". For example, in *Cyclone Drilling, Inc. v. Kelley*, 769 F.2d 662, 664 (10th Cir. 1985), Cyclone Drilling had two different mailing addresses and the IRS sent a notice of deficiency to the older address, which may not have been its "last known address". Acknowledging that such a notice not sent to the company's "last known address" is invalid, that court reversed a summary judgment.

In *Mulvania v. CIR*, 769 F.2d 1376 (9th Cir. 1985), the IRS sent a notice of deficiency to an address at "'St. Linda Isle Drive,' rather than '57 Linda Isle Drive,' Mulvania's correct address. The postal service returned the notice to the IRS on April 21, 1981, marked 'Not deliverable as addressed.'" Id., at 1377. In addressing the validity of that notice of deficiency, the appellate court held that "an erroneously addressed and undelivered registered notice of deficiency is not valid under either § 6212(a)" and that "the actual notice of deficiency which was mailed to Mulvania became null and void when it was returned to the IRS; at that time, the IRS then knew that the notice had been misaddressed and had not been received." Id., at 1379. See also *Roszkos v. CIR*, 850 F.2d 514, 517 (9th Cir. 1988)("a misaddressed notice of deficiency, which is returned to the IRS undelivered, is 'null and void.'").

In *Mulder v. CIR*, 855 F.2d 208, 211 (5th Cir. 1988), Mulder filed a tax return

11

listing as his address that of his parent's business. He thereafter moved, and later filed a request for an extension of time to file a return that listed his then current mailing address. Nonetheless, the IRS mailed a notice of deficiency to the old address, and later assessed and attempted collection of the taxes that were the subject to the notice of deficiency, which resulted in Mulder initiating tax court litigation. His loss in Tax Court was reversed:

> "The 'last known address' is a term of art and refers to that address which, in light of all relevant circumstances, the IRS reasonably may consider to be the address of the taxpayer at the time the notice of deficiency is mailed. * * * The IRS is required to use reasonable diligence in its efforts to ascertain this address. * * * The focus is on the information available to the IRS at the time it issued the notice of deficiency. * * * This involves a question of fact. * * * What the IRS knew or should have known is determined by consideration of all relevant facts and circumstances. Evidence is relevant if it tends to make the existence of what the IRS knew or should have known on the date of the notice 'more probable or less probable than it would be without the evidence.'"

In reversing the Tax Court, the Fifth Circuit concluded that, "given the facts that two letters posted shortly before the notice of deficiency were returned undelivered, and that the notice of deficiency was neither delivered nor returned, we are not persuaded that the IRS exercised due diligence in sending the notice to Mulder's last known address. More should have been done." Id., at 212. See also *Wallin v. CIR*, 744 F.2d 674 (9th Cir. 1984).

In *McPartlin v. CIR*, 653 F.2d 1185 (7th Cir. 1981), the taxpayers had moved from one address in Chicago to another, and had informed an IRS agent of the move,

in addition to filing returns listing the new address. However, a notice of deficiency was mailed to the old address, and when the McPartlins did not challenge such by a petition in Tax Court, the taxes claimed due in the notice were assessed. After the McPartlins learned about the notice of deficiency and the tax assessment, they filed a late tax court petition which was dismissed by the Tax Court. The Seventh Circuit reversed, noting, among other matters, that if a "return receipt was sent to the Commissioner[,] it should have informed him that petitioners no longer resided at Lockwood Avenue. In such circumstances, notice is also insufficient." Id., at 1191. See also *Crum v. CIR*, 635 F.2d 895, 901 (D.C. Cir. 1980).

In *Powell v. CIR*, 958 F.2d 53 (4th Cir. 1992), the taxpayers moved from one place in Maryland to another, and filed a tax return showing the new address. Later, the IRS mailed a notice of deficiency to the old address, which was returned by the Postal Service as "unclaimed." Nonetheless, the IRS assessed the deficiency, which caused the Powells to file a late tax court petition, which was dismissed. The Fourth Circuit followed the decision in *McPartlin*, *supra*, and concluded that "when the IRS received the returned notice, that was proof that the same had not been delivered to the Powells," and the notice was insufficient. Id., at 56. See also *Holof v. CIR*, 872 F.2d 50, 56 (3rd Cir. 1989)("the notice of deficiency sent to the Holofs, incorrectly addressed and not actually received in time to petition the Tax Court, could not set into motion any of the statutory assessment procedures."); *Sicker v. CIR*, 815 F.2d

13

1400, 1401 (11th Cir. 1987); and *Robinson v. United States*, 920 F.2d 1157, 1158 (3rd Cir. 1990). The Fifth Circuit has described these notices as null and void. See *Terrell v. CIR*, 625 F.3d 254, 261 (5th Cir. 2010).

This appeal concerns notices of deficiencies claimed to have been mailed to Talbot at his "last known address", but the relief he seeks is not based on the construction and interpretation of 26 U.S.C. § 6212, but rather § 6330(c)(1). This latter section was inserted into the 1986 Internal Revenue Code via the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105–206, 112 Stat. 685.

At first, the bill that became this law did not contain § 6330, and this section was added by the U.S. Senate. The House's Conference Report[4] regarding this bill agreed to this additional provision and commented:

> As under present law, notice of the intent to levy must be given at least 30 days (90 days in the case of a life insurance contract) before property can be seized or salary and wages garnished. During the 30-day (90-day) notice period, the taxpayer may demand a hearing to take place before an appeals officer who has had no prior involvement in the taxpayer's case. If, within that period, the taxpayer demands a hearing, the proposed collection action may not proceed until the hearing has concluded and the appeals officer has issued his or her determination.[5]

The taxpayer (or affected third party) is allowed to raise any relevant issue at

---

[4] H. Rept. 105–599, to accompany H.R. 2676, 105th Congress, 2d Sess. (1998).

[5] H.Rept. 105-599, at 263.

the hearing. Issues eligible to be raised include (but are not limited to):
(1) challenges to the underlying liability as to existence or amount;
(2) appropriate spousal defenses;
(3) challenges to the appropriateness of collection actions; and
(4) collection alternatives, which could include the posting of a bond, substitution of other assets, an installment agreement or an offer-in-compromise.

The taxpayer may contest the determination of the appellate officer in Tax Court by filing a petition within 30 days of the date of the determination. The IRS may not take any collection action pursuant to the determination during such 30-day period or while the taxpayer's contest is pending in Tax Court.[6]

However, the validity of the tax liability can be challenged only if the taxpayer did not actually receive the statutory notice of deficiency or has not otherwise had an opportunity to dispute the liability. This hearing right applies only after the first Notice of Lien with regard to each tax liability is filed.[7]

When the Internal Revenue Service Restructuring and Reform Act of 1998 was

enacted, title III, § 3401(b),[8] amended the 1986 Internal Revenue Code by adding §

6330 thereto, which states, in relevant, part as follows:

26 U.S.C. § 6330. Notice and opportunity for hearing before levy.
* * *
(c) Matters considered at hearing — In the case of any hearing conducted under this section —
(1) Requirement of investigation — The appeals officer shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met.
(2) Issues at hearing.

---

[6] H.Rept. 105-599, at 264.

[7] H.Rept. 105-599, at 265.

[8] 112 Stat. at 747.

15

(A) In general — The person may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including —
(i) appropriate spousal defenses;
(ii) challenges to the appropriateness of collection actions; and
(iii) offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise.
(B) Underlying liability — The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

Thus, a putative taxpayer may require that the IRS verify that, during the assessment of the taxes at issue, it complied with all relevant laws, regulations and procedures. Further, if that taxpayer did not receive a notice of deficiency, he is entitled to raise such issue at the hearing authorized by this statute.

Because § 6330 imposed duties on the Commissioner of Internal Revenue, he adopted Treasury Decision 8980 (67 Fed.Reg. 2551, January 18, 2002) which provided in pertinent part as follows:

26 C.F.R. § 301.6330-1 Notice and opportunity for hearing prior to levy.
* * *
(e) Matters considered at CDP hearing— (1) In general. Appeals will determine the timeliness of any request for a CDP hearing that is made by a taxpayer. Appeals has the authority to determine the validity, sufficiency, and timeliness of any CDP Notice given by the IRS and of any request for a CDP hearing that is made by a taxpayer. Prior to issuance of a determination, Appeals is required to obtain verification from the IRS office collecting the tax that the requirements of any applicable law or administrative procedure with respect to the proposed levy have been met.

The taxpayer may raise any relevant issue relating to the unpaid tax at the hearing, including appropriate spousal defenses, challenges to the

16

appropriateness of the proposed levy, and offers of collection alternatives. The taxpayer also may raise challenges to the existence or amount of the underlying liability, including a liability reported on a self-filed return, for any tax period specified on the CDP Notice if the taxpayer did not receive a statutory notice of deficiency for that tax liability or did not otherwise have an opportunity to dispute the tax liability. Finally, the taxpayer may not raise an issue that was raised and considered at a previous CDP hearing under section 6320 or in any other previous administrative or judicial proceeding if the taxpayer participated meaningfully in such hearing or proceeding. Taxpayers will be expected to provide all relevant information requested by Appeals, including financial statements, for its consideration of the facts and issues involved in the hearing.
* * *

Q-E2. When is a taxpayer entitled to challenge the existence or amount of the tax liability specified in the CDP Notice?

A-E2. A taxpayer is entitled to challenge the existence or amount of the underlying liability for any tax period specified on the CDP Notice if the taxpayer did not receive a statutory notice of deficiency for such liability or did not otherwise have an opportunity to dispute such liability. Receipt of a statutory notice of deficiency for this purpose means receipt in time to petition the Tax Court for a redetermination of the deficiency determined in the notice of deficiency. An opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals that was offered either before or after the assessment of the liability. An opportunity for a conference with Appeals prior to the assessment of a tax subject to deficiency procedures is not a prior opportunity for this purpose.
* * *

Example 2. Same facts as in Example 1, except the taxpayer does not receive the notice of deficiency in time to petition the Tax Court and did not have another prior opportunity to dispute the tax liability. The taxpayer is not precluded from challenging the existence or amount of the tax liability in a subsequent CDP hearing.

Section 6330 favorably addresses a serious problem caused by bureaucratic tax

collection activities. The cases cited above clearly show instances where notices of

deficiencies were mailed to taxpayers at addresses other than their "last known address". The question arises: are some, perhaps most, of these notices inflated or even grossly erroneous? Should not a taxpayer, being surprised that the IRS claims that he owes huge sums as taxes, have some administrative remedy to resolve a problem he never knew existed? Congress addressed these questions via the Internal Revenue Service Restructuring and Reform Act of 1998, and now this provision of the tax code declares that if a tax debtor **DOES NOT RECEIVE** a notice of deficiency, he can have the tax assessment set aside and vacated. Current law holds that such a void notice also voids the tax debt. See *Hoyle v. CIR*, 131 T.C. No. 13 at 14 (2008)("If respondent's assessment of petitioner's 1993 tax liability was not preceded by a notice of deficiency as required by section 6213(a), the assessment is invalid.").

A number of cases decided by the Tax Court have addressed this precise issue of whether a putative tax debtor who does not receive a notice of deficiency but has taxes assessed against him nonetheless is entitled to raise this matter in a Collection Due Process hearing and have the tax debt vacated because of that lack of receipt. For example, in *Tatum v. CIR*, T.C. Memo. 2003-115, the notice of deficiency mailed to the Tatums was sent by certified mail, but was returned by the Postal Service as "unclaimed." The court noted that it "is therefore clear that section 6330(c)(2)(B) contemplates actual receipt of the notice of deficiency by the taxpayer." Id., at 6.

18

Based on the fact that the Tatums had not actually received the notice, the court held that "under section 6330(c)(2)(B), petitioners should have been allowed to challenge their underlying tax liabilities for 1990 and 1991 at the hearing. In cases where the taxpayer did not receive a notice of deficiency for a particular year and did not have an opportunity to challenge the underlying tax liability, we have remanded the matter to the Commissioner's Office of Appeals for a hearing pursuant to which the taxpayer has an opportunity to dispute his/her Federal income tax liability for that year." Id., at 9-10.

A similar situation arose in *Calderone v. CIR*, T.C. Memo. 2004-240. Here the Commissioner had mailed a copy of the notice of deficiency to Calderone's lawyer, but had absolutely no evidence that any notice was sent or attempted to be sent to Calderone himself. Calderone's "uncontroverted testimony states that he did not receive a notice of deficiency or know that the USPS was attempting to deliver one to him." Id., at 9. That court remanded the matter back to the IRS Appeals Office.

The case of *Conn v. CIR*, T.C. Memo. 2008-186, concerned a tax debtor who had been convicted of embezzlement and sentenced to prison. While there, a notice of deficiency was mailed to both him and his wife. The wife received the notice at her home, petitioned the Tax Court, and resolved her case. However, there was no evidence that Conn himself actually received that notice. In holding that Conn had not actually received the notice of deficiency, the court stated:

19

"Respondent argues that for purposes of section 6330(c)(2)(B), the mailing of a notice of deficiency to the taxpayer's last known address is sufficient. Respondent is mistaken. Under section 6330(c)(2)(B), the receipt of a notice of deficiency, not its mailing, is the relevant event. * * * If the taxpayer did not actually receive the notice in time to petition this Court, the taxpayer is entitled to challenge the underlying liability," Id., at 5-6.

"In cases where the taxpayer did not receive a notice of deficiency for a particular year and did not have an opportunity to challenge the underlying tax liability, we have remanded the matter to the Commissioner's Office of Appeals for a hearing during which the taxpayer may dispute the liability," Id., at 8.

See also *Kuykendall v. CIR*, 129 T.C. 77 (2007).

A similar case is that of *Barnes v. CIR*, T.C. Memo. 2010-30, where the tax debtor claimed he did not receive any notice of deficiency, and the Commissioner could not prove that one had been mailed. In remanding that case back to the IRS Appeals Office, the court noted:

"Section 6330(c)(2)(B) further provides that the person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for the tax liability or did not otherwise have an opportunity to dispute the tax liability. Under section 6330(c)(2)(B), the receipt of a notice of deficiency, not its mailing, is the relevant event," Id., at 8.

"Thus, there is no dispute that petitioner did not actually receive the notice of deficiency. Because it is undisputed that petitioner did not actually receive the notice of deficiency, he would normally have been entitled to challenge the underlying tax liability at the section 6330 hearing. * * * [P]roof that the notice of deficiency was not actually received will be sufficient to entitle a taxpayer to dispute the underlying tax liability in a section 6330 proceeding," Id., at 9.

The legal principles noted above are applicable to this appeal.

**B. The Disputed Proof of Mailing and Receipt of Notices in This Case.**

**I.** The problem regarding Talbot's alleged "self-serving" testimony.

In the Tax Court, Talbot maintained that he did not receive the notices of deficiencies for the years in question in this case. For example, in his opposition to the Commissioner's motion for summary judgment, he stated he "repeatedly asserted during the Collection Due Process (herein 'CDP') hearings that Petitioner did not receive the SNOD(s) with respect to the tax years at issue. Petitioner stated numerous times that he never received the SNOD(s) for the tax years at issue." Doc. 23, page 3.

And this assertion was factually based in the administrative record of this Collection Due Process hearing. During Talbot's Collection Due Process hearing, he informed Settlement Officer Weber that he had not received notices of deficiencies for the years 2001, 2003, 2004 and 2005:

> I did not receive any statutory notices of deficiency for the years at issue. I have NEVER had a previous opportunity to challenge the supposed tax liability.

Doc. 42, Stipulated Ex. 9-J, page 10. And he further asserted the following:

> I am under the impression that you, as a representative of the IRS, must consider whether the IRS met all the requirements of any applicable law or administrative procedure.

Doc. 42, Stipulated Ex. 9-J, page 11.

It thus was very important for Weber to determine that the IRS had complied

with all relevant laws and regulations, and that these notices had actually been prepared and mailed to Talbot by certified mail, and further that he had **received** these notices. But at best, during Weber's research, all that she was able to locate were copies of the notices of deficiencies and two U.S. Postal Service Forms 3877. From this evidence, Weber concluded that the questioned notices had in fact been prepared, and further that they had been delivered to the custody of the Postal Service for ultimate delivery to Talbot. Based on these facts, Weber obviously used the presumption that government employees are presumed to perform their duties, from which she concluded that Talbot consequently had received these notices. The Tax Court used this same rationale and presumption to conclude that Talbot had received these notices and thus the tax assessments against him were valid:

> Petitioner has not offered any evidence that the addresses to which the notices of deficiency were mailed were incorrect. Petitioner has offered only his own self-serving testimony that he did not receive the notices.

Memorandum, Doc. 44, page 16.

Failure to consider evidence because it is "self-serving testimony" in this context is error. In this type of Tax Court litigation, that court is engaged in a review of the administrative record, not a trial *de novo*. See *Keller v. Commissioner*, 568 F.3d 710, 718 (9th Cir. 2009). Administratively, Talbot had informed Settlement Officer Weber that he wanted confirmation that all legal requirements for assessing income taxes had been met, and he wanted evidence that he had actually received these

22

notices. Talbot's "self-serving" denial was plainly a part of the administrative record. And the parties stipulated to that administrative record, with no objections. See Doc. 42.

The primary issue in this appeal concerns the mailing and receipt of the disputed notices of deficiencies. To prove the mailing of letters, long ago the common law developed the "mailbox rule," accurately summarized in *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 319-20 (3d Cir. 2014):

> A "strong presumption" of receipt applies when notice is sent by certified mail, because it creates actual evidence of delivery in the form of a receipt. *Santana Gonzalez v. Att'y Gen.*, 506 F.3d 274, 279 (3d Cir. 2007) (emphasis added). A "weaker presumption" arises where delivery is sent via regular mail, for which no receipt, or other proof of delivery, is generated. Id. In the absence of actual proof of delivery, receipt can be proven circumstantially by introducing evidence of business practices or office customs pertaining to mail. *United States v. Hannigan*, 27 F.3d 890, 893 (3d Cir. 1994). This evidence may be in the form of a sworn statement. Id. at 895; *Custer v. Murphy Oil USA Inc.*, 503 F.3d 415, 420 (5th Cir. 2007) ("a sworn statement is credible evidence of mailing for the purposes of the mailbox rule."). However, because the presumption is weak where proof of receipt is attempted solely by circumstantial evidence, we require the affiant to have "personal knowledge" of the procedures in place at the time of the mailing. *Kyhn v. Shinseki,* 716 F.3d 572, 574 (Fed Cir. 2013).

> These affidavits implicate the presumption of receipt that arises under the mailbox rule. However, under the circumstances, it is a very weak presumption. Given Lupyan's denial, and the ease with which a letter can be certified, tracked, or proof of receipt obtained, that weak rebuttable presumption is not sufficient to establish receipt as a matter of law and thereby entitle CCI to summary judgment.

> The above rules apply in this circuit. See *Leason v. Rosart*, 811 F.2d 1322,

23

1325 (9th Cir. 1987)("'[I]f the adverse party denies receipt, the presumption [of receipt in the ordinary course of the mails] is gone from the case. The trier of fact must then weigh the denial of receipt against the inference of receipt arising from proof of mailing and decide whether or not the letter was received."); *Nunley v. City of Los Angeles*, 52 F.3d 792, 796 (9th Cir. 1995)("Courts have formulated the presumption so as to hold it rebutted upon a specific factual denial of receipt."); and *Salta v. INS*, 314 F.3d 1076, 1079 (9th Cir. 2002).

The "mailbox rule" envisions, as proof of the mailing of some letter, that the sender prove the preparation of a letter, its placement in an envelope properly addressed with postage, and its delivery to and receipt by the U.S. Postal Service. From such proof, a presumption arises that the Postal Service did its duty and delivered the mail to the addressee. But here, Talbot told Weber that he never received the notices of deficiencies, which rebutted the presumption of receipt. Both Weber and the Tax Court erred, by presuming that delivery without any proof whatsoever.

Even if the proceeding in the Tax Court had been a trial *de novo*, based on the authority noted above, Talbot could have testified to the fact that he never received these four notices of deficiencies, and that testimony would not be "self-serving" in the sense that it could be excluded as evidence. See *United States v. Matot*, 146 F.2d 197, 198 (2d Cir.1944); *United States v. Bucur*, 194 F.2d 297, 301 (7th Cir. 1952);

*United States v. Dellinger*, 472 F.2d 340, 381-82 (7th Cir. 1972); *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003); and *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009). All testimony — and all documents — offered by or on behalf of a party may fairly be said to be self-serving. That is why they are offered. See *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007); and *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015). Further, it would be absurd for the court to presume that a mere presumption by the Commissioner is superior evidence to the testimony of Talbot. This is particularly relevant given the fact that no testimony by anyone having personal knowledge of the facts was offered by the Commissioner.

In summary, both Weber and the Tax Court erred in failing to consider Talbot's evidence that he did not receive these notices and to rely instead on a weak presumption of delivery. After all, he had proven that he did not receive a series of other similar notices, and prevailed in the Tax Court on that very issue.

**II.** The troubling Postal Forms 3877.

To demonstrate and prove that the IRS delivered three of these notices to the U.S. Postal Service, Weber commenced a project to locate those for the years 2003, 2004, and 2005 as well as proof that such notices had been delivered to the Postal Service. She eventually obtained copies of these three notices, as well as a "substitute" USPS Form 3877 dated January 12, 2009, that listed these three notices of deficiencies allegedly mailed by certified mail to Talbot on that date. However,

25

there is an absence of any proof in this document of delivery of these notices to the Postal Service.

A number of courts have addressed this method of proof that relies upon Postal Form 3877. In *Welch v. United States*, 678 F.3d 1371 (Fed. Cir. 2012), that court succinctly summarized this method of proof of mailing:

> "While adherence to Manual procedures in mailing statutory notices is presumptive proof of mailing, strict compliance has not been legally required by other circuits. See, e.g., *Keado*, 853 F.2d at 1214. Other courts addressing the issue have used a two-prong inquiry when examining the IRS's claims that a notice of deficiency has been sent. See *O'Rourke*, 587 F.3d at 540-41; *Coleman v. Comm'r*, 94 T.C. 82, 91-92 (1990); see also *Keado*, 853 F.2d at 1214; *Zolla*, 724 F.2d at 810; *Ahrens*, 530 F.2d at 784-86. First, where the IRS has (1) established the existence of a notice of deficiency and (2) produced a properly completed PS Form 3877 certified mail log, it is entitled to a presumption of mailing, and the burden shifts to the taxpayer to rebut that presumption by clear and convincing evidence. See, e.g., *O'Rourke*, 587 F.3d at 540-41; *Coleman v. Comm'r*, 94 T.C. 82, 91-92 (1990). Second, in the absence of proof of a notice of deficiency and a properly completed Postal Form 3877 certified mail log, the IRS may meet its burden with evidence that is 'otherwise sufficient.' See, e.g., *O'Rourke*, 587 F.3d at 540-41; *Coleman v. Comm'r*, 94 T.C. 82, 91-92 (1990). While we believe this framework is sound generally, it still begs the question of what evidence is 'otherwise sufficient' for these purposes," Id., at 1377.

> "First, we find that the government bears the burden of proving proper mailing of a notice of deficiency by competent and persuasive evidence. *Butti*, 95 T.C.M. (CCH) 1321, 2008 WL 898822 at *3; *Coleman*, 94 T.C. at 90. Next, where the IRS has (1) established the existence of a notice of deficiency and (2) produced a properly completed PS Form 3877 certified mail log it is entitled to a presumption of mailing, and the burden shifts to the taxpayer to rebut that presumption by clear and convincing evidence. See, e.g., *Ahrens*, 530 F.2d at 784-86. In the absence of a properly completed PS Form 3877, where the existence of a notice of deficiency is not in dispute, the government must come forward with evidence corroborating an actual timely mailing of the

notice of deficiency. The evidence presented to prove timely mailing may include documentary evidence as well as evidence of mailing practices corroborated by direct testimony," Id., at 1378-79.

In *Welch*, a notice of deficiency concerning the year 1995 was one of those at

issue, and the proof of its mailing was held deficient:

> "Thus, even assuming the evidence is sufficient to prove that a 1995 notice of deficiency was approved and that the IRS intended to create it, only the return-receipt cards are potential proof that such a notice actually existed and was mailed. As appellants correctly argue, the government offers no way to cross-reference the return-receipts with whatever letter or correspondence it accompanied. Fowler-Moore's testimony can only establish that some form of certified mail was sent to appellants on September 11, 2000. In the absence of evidence establishing a connection between the return-receipt cards and a particular document, the parties can do no more than speculate as to the letters' contents," Id., at 1381.

In *Pietanza v. CIR*, 92 T.C. 729, 741 (1989), there was no notice of deficiency

offered into evidence, and only the Form 3877 was available. In concluding that such

evidence failed to prove the mailings of the questioned notices, the court stated:

> We recently considered the inverse side of this question in *Magazine v. Commissioner*, 89 T.C. 321 (1987). In that case the notice of deficiency, dated March 29, 1983, was in existence. The petition was filed more than 3 years beyond the 90-day period set forth in section 6213. Respondent had destroyed the postal service Form 3877, and we considered whether respondent could prove the mailing and date of mailing by means of employee 'habit evidence' regarding the mailing of statutory notices. Respondent did not present evidence of mailing or any direct testimony that the notice was mailed. We held that while such habit evidence was admissible, it did not, standing alone, meet respondent's burden to show that the notice was in fact mailed. In *United States v. Wright*, 658 F. Supp. 1 (D. Alaska 1986), a collection action, the Government had lost the administrative file and had long since discarded the daily log of mailings, but did have a date-stamped copy of the deficiency notice. The District Court held that the date-stamped deficiency notice,

27

standing alone, did not prove the requisite mailing of the notice and dismissed the Government's complaint.

And an improperly completed Form 3877 fails to establish the mailing of such notices. See *Knudsen v. CIR*, T.C. Memo. 2015-69 at 14, 16 ("a defective Form 3877 does not trigger a presumption of regularity. * * * the absence of a signature by the receiving U.S. Postal Service post office employee, * * *, render a PS Form 3877 improperly completed."); and *Meyer v. CIR*, T.C. Memo. 2013-268 at 24 ("no separate signature from the person who issued the notices was present here."). These same defects exist here.

The Domestic Mail Manual is published by the Postal Service and its provisions are valid as regulations. See 39 C.F.R. §111.1 ("the U.S. Postal Service hereby incorporates by reference in this part, the Mailing Standards of the United States Postal Service, Domestic Mail Manual, a looseleaf document published and maintained by the Postal Service.").[9] Part of the procedures for mailing notices of deficiencies is known by review of the Domestic Mail Manual.

When a party desires to mail a single piece of certified mail, the Postal Service issues to that party an executed Postal Service Form 3800, which shows that such piece of mail was delivered to the possession of the Postal Service, as evidenced by

---

[9] The Manual is available on the Internet here (accessed July 10, 2017): http://pe.usps.com/cpim/ftp/manuals/dmm300/full/MailingStandards.pdf

a stamp. However, when a mailer like the IRS wishes to mail more than 3 pieces of certified mail, the Postal Service uses a Form 3877. But, the Domestic Mail Manual permits authorized mailers to customize this form for their own purposes. But whether an official Form 3877 or a customized one is used, the form must be properly completed. See *O'Rourke v. United States*, 587 F.3d 537, 541 (2d Cir. 2009)(a defective Form 3877 means that the presumption of mailing does not arise); *Coleman v. CIR*, 94 T.C. 82, 90 (1990); and *United States v. Ahrens*, 530 F.2d 781 (8th Cir. 1976).

These three notices allegedly mailed to Talbot were prepared by the IRS Service Center in Ogden, Utah. When the IRS prepares these notices, the first page of each notice lists the certified mail number that will be used to mail that particular notice. After perhaps 1000 or more of these notices are prepared, certain information regarding each notice is listed on the customized Form 3877 that the IRS uses, which includes the name and address of the party to whom the notice is being sent as well as the certified mail number for each piece. The customized IRS Form 3877 requires a signature of the employee who prepares all of these notices. Apparently, when this work is completed, all of this mail is placed in a huge box or bag and then carried to the local Post Office.

There, a local postal employee must acknowledge receipt of each piece of certified mail. Each page of multiple Forms 3877 lists the number of pieces of mail

29

delivered to the Post Office and the number of pieces received by the Post Office. Obviously, the IRS employee delivering the mail will deliver that bundle of mail and each page of the Form 3877 will be reviewed by the postal employee. As each piece of mail is acknowledged as being received, the postal employee must agree that the total number of pieces of mail listed on each page of the form has actually been received, this being demonstrated by the postal employee inserting that number on the place provided on the form. The postal employee must also stamp each page of the form with the Postal Service stamp and sign each page.

Here, the "substitute" Form 3877 used to prove delivery of the notices of deficiencies for years 2003, 2004 and 2005 to the Postal Service is defective. While this form notes the number of notices listed by the IRS (12), the Postal Service did not acknowledge receipt of 12 notices because that space is blank on the form. Further, the line for the IRS employee who prepared the notices is unsigned. And the place for the date and signature of the Postal Service employee who received this batch of notices is likewise blank.

There does appear a round stamp with the date of "Jan 12 2009" in its center, below which is the signature of some party whose first name appears to be "David." Since "IRS Ogden UT 84201" appears on that stamp, that stamp appears to be that of the IRS Service Center, rather than a Postal Service stamp.

But in any event, there are omissions on this Form 3877, and a number of

courts have held that defective Forms 3877 destroys the presumption of mailing. Here, the mailbox rule was inapplicable and its presumption did not arise because the customized Form 3877 was deficient. But if there was any import arising from these defective forms, it was rebutted by the proof offered by Talbot.

The Tax Court thus erred in its order dismissing Talbot's petition.

## CONCLUSION

For the reasons noted above, the decision of the Tax Court must be vacated.

## STATEMENT OF RELATED CASES

The undersigned is not aware of any related cases or appeals.

Respectfully submitted this the 12th day of July, 2017.

/s/    *Peter Gibbons*

Peter Gibbons
Attorney for Appellant
1805 North Carson Street, St. E
Carson City, NV 89701-1216
775-546-1450
LawDr1@npn.net

CERTIFICATE OF COMPLIANCE

Pursuant to F.R.A.P. 32(a)(7)(C), I certify, based on the word-counting function of my word processing system (WordPerfect, Version 11), that this brief complies with the type-volume limitations of F.R.A.P. 32(a)(7)(B):

1. Exclusive of the exempted portions specified in F.R.A.P. 32(a)(7)(B)(iii), this brief contains fewer than 14,000 words, to wit, 8992 words;

2. The brief has been prepared in a proportional spaced format using Times New Roman type (14 point type).

I have also scanned this brief and the attached documents with a commercial anti-virus program, AVG, and have detected no virus.

/s/    *Peter Gibbons*
Peter Gibbons

CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2017, I electronically filed the foregoing brief for the Appellant with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/    *Peter Gibbons*
Peter Gibbons